IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 12 |
| NORBERT ALFRED HEMANN, | ) | |
| | ) | Bankruptcy No. 11-00261 |
| Debtor. | ) | |

## ORDER RE: CONFIRMATION OF AMENDED
## CHAPTER 12 PLAN

This matter came before the Court on May 10, 2012, and July 2, 2012, for

hearings on confirmation of Debtor's First Amended Chapter 12 Plan of

Reorganization (Doc. 59).   Attorney Joseph Peiffer represented Debtor Norbert

Hemann.   Carol Dunbar appeared as Chapter 12 Trustee.   Attorney Martin

McLaughlin appeared for the United States on behalf of the Internal Revenue

Service ("IRS").   Attorney John Waters appeared for the Iowa Department of

Revenue ("IDOR").   After the presentation of evidence and argument, the Court

took the matter under advisement.   This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(L).

### STATEMENT OF THE CASE

Debtor's Chapter 12 Plan of Reorganization proposes to treat certain Federal

and Iowa taxes as unsecured claims under 11 U.S.C. § 1222(a)(2)(A).   The IRS and

IDOR object.   They assert Debtor is not a family farmer eligible for relief under

Chapter 12.   They also argue the taxes, which arise from Debtor's sale of an interest

in a farm partnership, are not subject to treatment under § 1222(a)(2)(A).   The

Court concludes Debtor is eligible for Chapter 12 relief and the tax debts fall within

the scope of § 1222(a)(2)(A).   Debtor's Chapter 12 plan is confirmable.

## FINDINGS OF FACT

Debtor Norbert Hemann, age fifty-six, grew up on a farm and started farming

with his father in 1974.   In 1988, Debtor and his younger brother Andrew Hemann

took over for their father and started farming together.   Debtor and Andrew

continued farming together when they formed the Hemann Brothers Partnership in

November 1993.   Each held a 50% interest.   The farm partnership owned the

livestock and machinery the two brothers used in farming.   The individual partners

signed up for separate government farm program payments.   Debtor and Andrew

divided the farm labor equally between them.   Both of them milked cows and baled

hay.   Debtor prepared fields, hauled grain, and ground the feed.   Andrew ran the

combine and the planter.   The two brothers farmed more than 300 acres on leased

land and split the field work in half as much as they could.

Eventually, Debtor decided to down-size his farming operation.   Debtor and

Andrew entered into a Dissolution Agreement to end their farm partnership on

2

October 15, 2010.   (Debtor's Ex. G.)   According to the Agreement, the net worth

of the farm partnership was $187,319.00.   Assets included crops, livestock,

machinery, and titled vehicles.   Liabilities included loans, a repair bill, a feed

account, farm rent, and additional payables.   Debtor and Andrew agreed that

Debtor would retain an IH 350 tractor, a generator, and a 1997 Chevy 1/2 ton pickup.

Andrew retained the remainder of the assets, assumed the liabilities, and paid Debtor

$90,734.50 for his interest in the farm partnership.

In the years 2007–2010, Debtor received income from the farm partnership as

follows: $197,297.00 in 2007, $191,759.00 in 2008, $167,283.00 in 2009 and

$123,297.00 in 2010.   (Debtor's Ex. P, H, I and J.)   In 2008 and 2009, Debtor's

gross farm income constituted more than 50% of the joint income of Debtor and his

spouse as reported on their income tax returns.   (Debtor's Ex. M and N.)

After the dissolution of the farm partnership, Debtor continued to farm in a

smaller farming operation.   Debtor initially leased approximately twenty-eight

acres of the same land he previously farmed through the partnership.   When that

land sold in early 2011, Debtor began leasing twenty-six acres of land from his

brother, Andrew.   He also leased five additional acres of land.   Debtor also helps

Andrew out with his farm chores and sometimes trades labor with Andrew, or pays

for his help, if he needs Andrew's machinery to work his fields.   Debtor testified

3

that he's been a farmer all his life and would like to keep farming.    He also stated he believed he needed to have farm ground to have a Chapter 12 case.    Debtor filed his Chapter 12 bankruptcy petition on February 15, 2011.

Debtor has a $22,000.00 farm line of credit through St. Angsar State Bank (the "Bank") for crop inputs.    In 2011—the year after the partnership ended—Debtor had gross farm income of $21,600.00 from raising corn.    Debtor's fields in 2012 were in soybeans.    Debtor estimates 2012 gross farm income will end up being $12,477.00.

In addition to running his own smaller farming operation, Debtor has been working two part-time jobs.    In 2011, he had gross income of approximately $15,000.00 from Greg Krebsbach for doing farm labor and $5,143.00 from North Iowa Produce, Inc., a chicken processing plant.    Debtor is unable to travel far for off-farm work because of a visual impairment.

Debtor's wife, Marybeth Hemann, works at Mayo Clinic in accounts payable. She pays the couple's monthly mortgage payment of $350.00 to the Bank from her wages.    Mrs. Hemann and Debtor have agreed to borrow additional funds from the Bank, up to $20,000.00, to pay back taxes to the IRS and IDOR through Debtor's Chapter 12 Plan.    This additional debt will be included in the mortgage.    The

4

mortgage payment will remain the same but the term will be extended to cover the additional debt.

The IRS and IDOR filed priority claims for taxes in Debtor's Chapter 12 case arising from the dissolution of the farm partnership.   The IDOR filed a proof of claim for $27,596.00.   The IRS filed a proof of claim in the amount of $97,457.39. After further review, the IRS reduced its claim to approximately $68,000.00.   It has noted this could be reduced further if Debtor provides the IRS the amount of his cost basis in the farm partnership property.   Both the IRS and IDOR treat the farm partnership dissolution transaction as a sale of a capital asset and assess tax on Debtor's capital gain.

Debtor's Chapter 12 Plan treats the income from the farm partnership sale as income from the sale of business property.   In Exhibit K, a "traditional" tax return, Debtor reports owing 2010 federal taxes of $97,276.00, and 2010 Iowa taxes of $27,596.00.   In Exhibit L, Debtor provides a 2010 "Pro Forma" return calculating his tax liability to illustrate how 11 U.S.C. § 1222(a)(2)(A)—the farm bankruptcy provision at issue here—applies.   Debtor calculates a 2010 federal tax due of $10,766.00 and 2010 Iowa taxes owed of $3,864.00.   Debtor's plan treats the remainder of the tax claims of the IRS and IDOR as unsecured claims under § 1222(a)(2)(A).   Debtor admits the amounts of the "priority" tax claims may have

5

increased to the extent that interest has accrued, but does not exceed

$20,000.00—the maximum amount the Bank has agreed to lend to Debtor and his

wife to pay these claims.

The parties agree that if Debtor is required to pay more than $20,000.00 in

priority tax claims through his plan, the plan is not feasible.   Debtor has insufficient

income or other resources to pay the full amounts claimed by the IRS and IDOR as

priority claims.

At the confirmation hearing, Debtor offered the expert testimony of Dr. Neil

Harl regarding the treatment of small partnerships under the Internal Revenue Code.

He stated that the farm partnership qualified for tax treatment under the "small

partnership exception" of 26 U.S.C. § 6231(a)(1)(B).   Dr. Harl testified the

partnership was a pass-through entity, not a taxpayer and only filed informational

tax forms.   The farm partnership's income passed through to the individual

partners, Debtor and his brother, Andrew Hemann.   They reported the income on

annual Schedule K-1s that the partners included with their individual tax returns.

Dr. Harl asserted that, under the small partnership exception (26 U.S.C.

§ 6231(a)(1)(B)), the partnership entity is essentially ignored for tax purposes.   He

points to the language of the Internal Revenue Code—entitled "Exception for Small

Partnerships"—that specifies:   "The term partnership shall not include any

partnership having 10 or fewer partners . . . ."   26 U.S.C. § 6231(a)(1)(B).   He

essentially reasons that, like farm income from the farm partnership, farm

partnership assets are treated for tax purposes as being owned by and ascribed to the

individual because the partnership is ignored.

Debtor's recalculated 2010 tax return, according to Dr. Harl, properly treats

Debtor's income as arising from the sale of assets owned by the individuals, using

the small partnership exception.   Dr. Harl asserts that properly computed under 26

U.S.C. § 6231(a)(1)(B) Debtor sold his personal interest in the assets of the farm

partnership to Andrew Hemann, not his capital interest in the farm partnership.   Dr.

Harl reiterated several times that small partnerships are treated as if there was no

partnership for federal tax purposes.   Conceptually, the farm partnership entity was

a mere conduit for income and assets that flow through to the individual partners.

The IRS and IDOR objected to Dr. Harl's testimony in its entirety as improper

legal opinion.   The Court took Dr. Harl's testimony subject to that objection.

The IRS and IDOR treat the farm partnership dissolution transaction as a

transfer of Debtor's "partnership interest"—not a sale of "farm assets" as is required

to get the benefit of § 1222(a)(2)(A).   They assert that the sale of a "partnership

interest" is a sale of a capital asset which receives capital gains tax treatment under

conventional partnership rules.   The Court allowed a revenue agent, Mary Snow, to

7

testify under a pseudonym to protect her identity—over Debtor's objection.   She

computed Debtor's tax from the farm partnership sale under § 741 of the Internal

Revenue Code, which specifies that any income from the sale of a partnership

interest is treated as a capital gain.   Ms. Snow stated she was not aware of 26

U.S.C.§ 6231(a)(1)(B)—the small partnership exception—before giving her

deposition testimony in this case.

## THE PARTIES' ARGUMENTS

The IRS first asserts Debtor is not eligible for Chapter 12.   It argues that

Debtor is not eligible because Debtor's prepetition farming operation (farm

partnership) was different from the farming operation existing at the date of the

bankruptcy filing (Debtor's own small farm).   The IRS argues that, to be eligible,

the farming operation on the date the case is filed must arise from the same farming

operation that generated income in the three years preceding the year the case was

filed.   The IRS asserts that the farm partnership interest Debtor sold to his brother is

not part of the farming operation Debtor is reorganizing.   The IRS argues Debtor

ended his farming operation and started a new and different operation.   Thus, it

concludes that Debtor is not eligible for Chapter 12 and the sale cannot be subject to

the provisions of § 1222(a)(2)(A) in this case.

The IRS next argues the sale of Debtor's partnership interest was not a sale of "farm assets" which is required for Debtor to get the benefits of § 1222(a)(2)(A). The IRS argues this sale is properly treated as a sale of a capital asset—partnership interest.   The IRS argues a sale of "capital assets" is not the same as a sale of farm assets.

The IDOR relies on the IRS for arguments about Debtor's eligibility for Chapter 12.   The IDOR, like the IRS, then argues that the sale of Debtor's interest in the farm partnership was a sale of a capital asset, not a transfer of farm assets used in the farming operations.   The IDOR and IRS argue that under Iowa law, the farm partnership, not Debtor, owned the farm assets.   Thus, they conclude Debtor did not transfer "farm assets" and § 1222(a)(2)(A) cannot apply to this case.   The IRS and the IDOR both agree that any possible tax treatment of Debtor's farm partnership interest under the "small partnership" provision is not determinative of whether § 1222(a)(2)(A) of the Bankruptcy Code is applicable in this case.

Debtor argues he is eligible for Chapter 12 under all the requirements of §§ 101(18)(A) and 109(f).   He was engaged in a farming operation on the date he filed the Chapter 12 petition.   His total debts are lower than the $3,792,650.00 limit imposed by § 101(18)(A).   He asserts that not less than 50% of his debts arise out of a farming operation, i.e., $145,467.00 total farm debt compared to $237,001.00 total

9

debt excluding the debt on Debtor's residence.   Id.   Debtor includes the full claims

of the IRS and IDOR in the amount of total farm debt.   Debtor provided

calculations showing more than 50% of his gross income in 2010, or in both 2008

and 2009 (the second and third tax years prior to the year the Chapter 12 petition was

filed), was received from the farming operation as required by § 101(18)(A).

Debtor argues that conducting his farming operation through the farm partnership

does not disqualify him from Chapter 12 protection.

   Debtor further argues that under the rules related to the "small partnership

exception" in 26 U.S.C. § 6231(a)(2), the sale of his interest in the farm partnership

is treated for tax purposes as a sale of farm assets he owned.   He asserts that the

"farm assets" requirement of § 1222(a)(2)(A) is satisfied and he is entitled to treat a

portion of the IRS and IDOR taxes as unsecured claims as his plan proposes.

Debtor also argues that even if the IRS and IDOR were correct that he did not sell

farm equipment and related items that he owned and instead sold a capital interest in

the farm partnership, that capital interest was still itself a "farm asset" used in his

farming operation.   He asserts it was undisputed he and his brother did the farming.

He then asserts that the only way he "farmed" was through his use of his partnership

interest—which has to be a farm asset.   Either way, he asserts his taxes arising from

the dissolution of the farm partnership can be stripped of priority under

§ 1222(a)(2)(A).

## CONCLUSIONS OF LAW

Congress enacted Chapter 12 to allow family farmers with regular annual

income to adjust their debts.   Hall v. United States, 132 S. Ct. 1882, 1885 (2012).

"The purpose of chapter 12 is to provide farmers with the chance to save their farms,

restructure their debt, and continue farming."   In re Sandifer, 448 B.R. 382, 386

(Bankr. D.S.C. 2011).   Chapter 12 is meant to assist farmers in preserving their

operations.   In re Nelson, 291 B.R. 861, 871 (Bankr. D. Idaho 2003).

## 1.   ELIGIBILITY FOR CHAPTER 12

Statutorily, only a "family farmer" with regular annual income may be a

debtor under Chapter 12.   11 U.S.C. § 109(f).   "Family farmer" is a defined term in

the Code.   11 U.S.C. § 101(18)(A).

> (18) The term "family farmer" means—
>
>> (A) individual or individual and spouse **engaged in a farming operation** whose aggregate debts do not exceed $3,792,650 and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt **arises out of a farming operation**), on the date the case is filed, **arise out of a farming operation** owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from **such farming operation** more than 50

> percent of such individual's or such individual and spouse's gross
> income for—
>
> > (i) the taxable year preceding; or
>
> > (ii) each of the 2d and 3d taxable years preceding;
>
> the taxable year in which the case concerning such individual or
> such individual and spouse was filed . . . .

11 U.S.C. § 101(18)(A) (emphasis added).   A debtor filing a Chapter 12 petition

bears the ultimate burden of proving eligibility for relief under that chapter.   In re

Tim Wargo & Sons, Inc., 869 F.2d 1128, 1130 (8th Cir. 1989); In re Michels, Bankr.

No. 03-00316, 2003 WL 1965849, at *2 (Bankr. N.D. Iowa Apr. 14, 2003).   There

are essentially four elements to the "family farmer" test:   (1) engaged in farming;

(2) aggregate debt less than $3,792,650.00; (3) 50% of the aggregate debt arose "out

of a farming operation;" and (4) 50% of gross income was received from a farming

operation in the taxable year before bankruptcy or each of the 2nd and 3rd taxable

years before bankruptcy.   11 U.S.C. § 101(18)(A).

　　It appears the first and second elements of the test are satisfied even

considering the IRS arguments.   For Debtor to be eligible to file a Chapter 12 case,

the Court must find that he is "engaged in a farming operation," the first element of

§ 101(18)(A).   In re Koppes, Bankr. No. 99-01748-D, 2000 WL 150836, at *4

(Bankr. N.D. Iowa Jan. 5, 2000).   "Farming operation" is defined in § 101(21) as

12

"farming, tillage of the soil, dairy farming, ranching, production or raising of crops,

poultry, or livestock, and production of poultry or livestock products in an

unmanufactured state."   The relevant date for determining whether a debtor is

"engaged in a farming operation" is the date the Chapter 12 petition is filed.

Koppes, 2000 WL 150836, at *4; In re Watford, 898 F.2d 1525, 1527 (11th Cir.

1990).   Courts construe this definition liberally in order to further Congress'

purpose of helping family farmers to continue farming.   Id.; Knudsen v. IRS, 581

F.3d 696, 714 (8th Cir. 2009), abrogated on other grounds by Hall v. United States,

132 S. Ct. 1882 (2012).   This Court recognizes that the portion of the Eighth

Circuit's decision in Knudsen concluding that § 1222(a)(2)(A) applies to

postpetition taxes was abrogated by the Supreme Court in Hall.   This Court

believes, however, that the other holdings of Knudsen continue to be good law and

its interpretations of Chapter 12 in general and §1222(a)(2)(A) in particular are

controlling.

       This Court finds that the record conclusively establishes that Debtor was

engaged in a farming operation on the date he filed the Chapter 12 petition.

Although the farm partnership had been dissolved prepetition, Debtor continued to

farm thirty-one acres of leased land with a corn crop in 2011 and soybeans in 2012.

He had a farm line of credit to finance crop inputs.   He retained a tractor and pickup

to help work the land.   He simply continued farming on a smaller scale.   This

meets the first element of § 101(18)(A).

The record also establishes the second element (aggregate debt limit) as well.

The debt limit is $3,792,650.00.   The total amount of claims filed is $205,173.72.

The total amount of claims scheduled, which excludes the tax debt, equals

$136,358.15.   The total debt is thus well below the limit by any measure.

The IRS argues that Debtor here cannot satisfy the third and fourth parts of the

§ 101(18)(A) test.   The IRS asserts there are two different farming operations—the

farm partnership and Debtor's own small operation—and Debtor cannot mix them

for Chapter 12 eligibility purposes.   The IRS argues that the "farming operation"

that is being reorganized by Debtor must be the same "farming operation" that

satisfies the requirements relating to 50% of debts and 50% of income.   The IRS

argues that none of the prepetition debt and income needed for eligibility arise out of

the "farming operation" Debtor currently has and is attempting to reorganize.   The

IRS does not, however, cite any authority for its position that the debts must arise out

of the same farming operation that exists at the petition date or after the petition date.

The IRS is correct that Debtor relies on his "farming operation" and that at

different times Debtor farmed through two different legal entities—a farm

partnership and then a sole proprietorship.   Debtor's calculations relating to the

14

50% of aggregate debt requirement rely on the farm partnership operation that was

entirely prepetition.   Debtor asserts total debt on the date of filing (excluding debt

on the principal residence as § 101(18)(A) provides), is $237,001.29.   Under

§ 101(18)(A), 50% of that amount, or $118,500.65, must "arise out of **a** farming

operation."   (emphasis added).   Debtor asserts that the total farm debt is

$145,467.18.   This amount arises largely out of the tax liability from the sale of the

assets held in the farm partnership.   He estimated at filing that he owed the IRS

$97,296.00 and the IDOR $27,596.00 from the farm partnership sale.   After the IRS

reduced its claim to $68,031.00, 50% of the total debt is $103,878.15.   With that

adjustment, the farm debt, according to Debtor, would still be $116,202.18—and

exceed the 50% requirement.   The IRS does not dispute that if Debtor can combine

the operations, Debtor would satisfy the element.   The IRS, however, claims that

Debtor cannot combine two different "farming operations" to meet the eligibility

requirements.

   The IRS essentially makes the same argument with regard to the 50% gross

income requirement.   11 U.S.C. § 101(18)(A).   The IRS asserts Debtor did not get

50% of his prepetition income—under either formula—from the farming operation

at issue here.

15

The Court concludes that the IRS is incorrect about its farming operation argument.   The Eighth Circuit addressed and rejected a very similar argument in Knudsen, 581 F.3d at 714 n.3.   The Eighth Circuit rejected the district court's conclusion that "the debtor's farming operation" within the meaning of § 1222(a)(2)(A)—language similar to the eligibility language of § 101(18)(A)—must be the same farming operation under the reorganization plan. Id. at 714 n.3.   The Eighth Circuit acknowledged that Debtor's "'farm operation' changed from a farrow to finish hog operation to raising pigs under a contract with [a third party]."   Id. at 714.   The Eighth Circuit, however, rejected the district court's conclusion that "farming operation" meant "*the farming operation under the reorganization plan*, not the farming operation as it existed before the farmer's attempt to reorganize."   Id. at 714 n.3.   The Circuit concluded that "[n]owhere in the language of § 1222(a)(2)(A) does it limit its application to only the 'reorganized' operation."   Id.

While the Eighth Circuit only specifically addressed the meaning of "farming operation" in § 1222(a)(2)(A), its rationale applies directly to the same words as they are used in § 101(18)(A).   "[I]dentical words and phrases within the same statute should normally be given the same meaning."   Hall, 132 S. Ct. at 1891 (quotation omitted).

16

Like § 1222(a)(2)(A), nowhere in § 101(18)(A) does it limit its application to a debtor's farming operation at the time of the petition date or post-petition.   The Knudsen definition of farming operation is broad, encompassing the whole of the Debtor's farming enterprise.   Since the Debtor never stopped farming, but rather merely changed the scope of his operation and the form of entity under which he chose to operate, the Debtor has only one farming operation.   Even if the Debtor had owned multiple entities, for instance one which raised livestock and the other which raised crops, he would still have only one farming operation.

The analysis used in other § 101(18)(A) cases leads to the same result.   Few courts have considered when a debt or asset "arises out of a farming operation" for the specific purposes of eligibility under § 101(18)(A).   In re Woods, 465 B.R. 196, 203 (B.A.P. 10th Cir. 2012) (surveying cases discussing when a debt or asset arises out of a farming operation.").   The Tenth Circuit B.A.P. recently adopted a broad test finding that "to 'arise out of a farming operation' the purpose of a debt must have **some connection** to the debtor's farming activity."   Id. (emphasis added).   In In re Roberts, 78 B.R. 536, 537 (Bankr. C.D. Ill. 1987), the court found that estate taxes related to the debtor's inheritance of a farm from her mother were debts arising out of a farming operation.   It noted that but for payment of the taxes, there would be no farm.   Id.   Roberts found support in In re Rinker, 75 B.R. 65, 68 (Bankr. S.D.

17

Iowa 1987), which held that debt arising from a will settlement was farm debt.   The

Rinker court found that the debtors' "purpose in settling the case was to preserve

their farming operation."   Id.   Both Roberts and Rinker applied what is known as

the "but-for" test, which is stricter than the "some connection" test espoused in

Woods.   465 B.R. at 203 n.16 (collecting cases).

Applying the less strict "some connection" test, the Court would easily

conclude that the tax debt arising from the dissolution of the farm partnership has at

least "some connection" to Debtor's farming activity.   Debtor and his brother used

the farm partnership as a vehicle for owning farm assets, incurring farm debt for a

significant period of time, and plying the trade of farming.   Debtor continues to be

engaged in a farming operation, albeit smaller in size than the one existing before the

farm partnership dissolution.   This is analogous to the changes the debtor made in

Knudsen to downsize and change the focus of the farming operation.   581 F.3d at

714.   In these circumstances, the Court concludes that the tax claims related to the

previous farm partnership should be included as farm debt in calculating whether

50% of Debtor's aggregate debts or previous year's income arise out of a farming

operation.   Debtor has thus proved all four of the § 101(18)(A) elements required

for eligibility under Chapter 12.

18

## 2. STRIPPING PRIORITY LIENS UNDER § 1222(a)(2)(A)

Normally, priority tax claims—like those of the IRS and IDOR—are entitled

to be paid in full in a plan of reorganization.   See 11 U.S.C. § 1129(a)(9); 11 U.S.C.

§ 1322.   Chapter 12 contains the same rule, with an important exception that is at

issue here.   11 U.S.C. § 1222(a)(2)(A).   That section states that a Chapter 12 plan

must provide for full payment of all claims entitled to priority under § 507, (such as

the IRS' and IDOR's tax claims) **unless**:

> (A) the claim is a claim owed to a governmental unit that arises as a
> result of the sale, transfer, exchange, or other disposition of any farm
> asset used in the debtor's farming operation, in which case the claim
> shall be treated as an unsecured claim that is not entitled to priority
> under section 507, but the debt shall be treated in such manner only if
> the debtor receives a discharge.

11 U.S.C. § 1222(a)(2)(A).   Under this section, "certain governmental claims

resulting from the disposition of farm assets are downgraded to general, unsecured

claims that are dischargeable after less than full payment."   Hall, 132 S. Ct. at 1885.

In Hall, the Supreme Court reasoned that for taxes to be entitled to priority under §

507(a) and eligible for the § 1222(a)(2)(A) exception, the taxes must be "incurred by

the estate" under § 503(b)(1)(B)(i).   Id. at 1886.   It concluded:   "We hold that the

federal income tax liability resulting from petitioners' postpetition farm sale is not

'incurred by the estate' under § 503(b) and thus is neither collectible nor

19

dischargeable in the Chapter 12 plan." <u>Id.</u> at 1893.   A Chapter 12 estate is not a

taxable entity under the Internal Revenue Code.   <u>Id.</u> at 1886.   Thus, it does not

incur taxes postpetition which could become administrative expenses under §

503(b)(1)(B)(i), entitled to priority status under § 507(a)(2).   <u>Id.</u>

The parties here agree that the holding in <u>Hall</u> does not directly impact this

case because the relevant "sale, transfer, exchange, or other disposition" occurred

prepetition at the dissolution of the farm partnership.   However, the IRS and the

IDOR assert their claims are entitled to priority status under § 507(a)(8) as

prepetition taxes on income for which a return was due within three years before the

Chapter 12 filing date and the § 1222(a)(2)(A) exception simply does not apply.

In enacting § 1222(a)(2)(A), Congress intended to grant family farmers relief

from considerable capital gains taxes which might arise from having to sell farmland

or other farm assets.   132 S. Ct. at 1895–96.   The dissent in <u>Hall</u> quoted Iowa

Senator Charles Grassley, a sponsor and supporter of the particular amendment

language changing the statute, who explained:

> Under current law, farmers often face a crushing tax liability if they
> need to sell livestock or land in order to reorganize their business
> affairs. . . .   [H]igh taxes have caused farmers to lose their farms.
> Under the bankruptcy code, the I.R.S. must be paid in full for any tax
> liabilities generated during a bankruptcy reorganization.   If the farmer
> can't pay the I.R.S. in full, then he can't keep his farm.   This isn't
> sound policy.   Why should the I.R.S. be allowed to veto a farmer's

20

> reorganization plan?  [The Amendment] takes this power away from
> the I.R.S. by reducing the priority of taxes during proceedings.  This
> will free up capital for investment in the farm, and help farmers stay in
> the business of farming.

Hall, 132 S. Ct. at 1896 (Breyer, J., dissenting) (quoting 145 Cong. Rec. 1113

(1999)).   Stripping governmental claims of priority status mitigates the tax expense

farmers incur when assets are foreclosed, sold, or otherwise disposed of by creditors.

Hall, 132 S. Ct. at 1896; 14A Mertens Law of Fed. Income Tax'n § 54:61 (Supp.

Dec. 2012).

As noted above, Hall overruled the portion of Knudsen that concluded

**postpetition taxes** could be treated under § 1222(a)(2)(A).   However, the

remainder of the Knudsen decision is still good law.   As the Eighth Circuit noted in

Knudsen:   "Section 1222(a)(2)(A) is, without doubt, complex and replete with legal

terms of art.   A full analysis of those terms will require examination of over 20

provisions of the Bankruptcy Code."   581 F.3d at 711.   The particular issue in this

case is whether the tax claims of the IRS and the IDOR arise "as a result of the sale,

transfer, exchange, or other disposition of any **farm asset used in the debtor's**

**farming operation**" under § 1222(a)(2)(A) (emphasis added).   If so, as noted in

Hall, they can fall into the category of "certain governmental claims resulting from

disposition of farm assets [which] are downgraded to general, unsecured claims that

21

are dischargeable after less than full payment."   132 S. Ct. at 1885 (majority

opinion).

The claims arise from Debtor's sale of his interest in the farm partnership.

The IRS and the IDOR argue Debtor's interest in the farm partnership was a capital

asset not a "farm asset used in the debtor's farming operation."   11 U.S.C.

§ 1222(a)(2)(A).   In response, Debtor first argues the Court should apply

§ 6231(a)(2) of the Internal Revenue Code and find the transfer of his farm

partnership interest was actually for tax purposes a sale of farm assets he owned and

used in the farming operation.   Alternatively, he argues his farm partnership interest

itself qualifies as a "farm asset used in his farming operation."   11 U.S.C.

§ 1222(a)(2)(A).

Debtor asserts that these already complex rules relating to partnership and

partner taxation require an additional, special consideration here because of the

"small partnership exception" found at 26 U.S.C. § 6231(a)(1)(B)(i).   That section

specifically states:

    (B)   Exception for small partnerships—

        (i)  In general.—The **term partnership shall not include any
        partnership if—**

            (I)   such partnership **has 10 or few partners** each of whom is
               a natural person . . . , and

22

> (II)   each partner's share of each partnership item is the same
> as his share of every other item.

26 U.S.C. § 6231(a)(1)(B)(i) (emphasis added).   Debtor's first argument is that the

"small partnership exception" under 26 U.S.C. § 6231(a)(2) requires that, for tax

purposes, this sale be treated as a sale of "farm assets."   Debtor argues the language,

structure, and intent of this Internal Revenue Code section requires that the

partnership is disregarded entirely when computing taxes for a small partnership

partner.   This argument, like others in this case surrounding the application of

§ 1222(a)(2)(A), involves numerous "substantive and procedural rules applicable to

the income taxation of partners and partnerships [that] are distressingly complex and

confusing."   Tigers Eye Trading, LLC v. Comm'r, 138 T.C. 67, 92 (2012) (quoted

sources omitted).

The regulations relating to that Code section specifically state that a

partnership otherwise qualifying for the small partnership exception "in section

6231(a)(1)(B) and paragraph (a) of this section (relating to the exception for small

partnership) may elect under paragraph (b)(2) of this section" to opt out of the small

partnership exception.   26 C.F.R. § 301.6231(a)(1).   Debtor argues, in simplest

terms, that because the Hemann Brothers Partnership (the farm partnership) meets

that small partnership definition and did not elect to have partnership rules apply, it

23

is not treated as a partnership for tax purposes.    As such, Debtor believes the sale of

his partnership interest should be treated as a sale of his assets—as if owned by

Debtor himself—not as a sale of an interest in a partnership.    He contends the farm

partnership is not treated as a partnership at all for taxing purposes under the small

partnership exception.    Because the partnership is ignored—treated as though it

does not exist—under the "small partnership exception," this sale is best

characterized as a sale of farm partnership assets.    As such, Debtor asserts that the

sale qualifies under § 1222(a)(2)(A) as a sale of farm assets.

Debtor presented expert testimony of Dr. Neil Harl, a former professor of

Economics at Iowa State University, in support of Debtor's small partnership

exception arguments.    Dr. Harl testified explaining how the small partnership

exception applied and its effect on this case.    The IRS and IDOR objected to this

testimony as legal opinion testimony.    They argue Dr. Harl was offering nothing

more than to tell the Court how to interpret and apply the law.    The Court took Dr.

Harl's testimony subject to that objection.    The Court now overrules the objection

as moot because the decision here will not rely in any way on his testimony.

The Court's own review of this issue confirmed what other cases have

noted—these rules and code sections are "distressingly complex."    <u>Tiger's Eye</u>,

138 T.C. at 92.    The "small partnership exception" in § 6231was part of the Tax

24

Equity and Fiscal Responsibility Act of 1982 (TEFRA), 26 U.S.C. §§ 6221–33.

Kanter v. Comm'r , 590 F.3d 410, 424 (7th Cir. 2009).   "In enacting TEFRA,

Congress intended administrative and judicial resolution of disputes involving

partnership items to be separate from and independent of disputes involving

nonpartnership items."   Id.   (quoted sources omitted).   See also Arbitrage Trading

LLC v. United States, 108 Fed. Cl. 588, 597–98 (2013) (noting same).   Stated

another way, TEFRA intended to implement "unified partnership audit examination

and litigation provisions which centralized the treatment of partnership taxation

issues, and ensure[d] equal treatment of partners by uniformly adjusting partner's

tax liabilities."   Katz v. Comm'r, 335 F.3d 1121, 1123–24 (10th Cir. 2003) (quoting

other 2nd Circuit cases).

Debtor argues that as part of that framework, Congress effectively removed

treatment of small partnerships from the treatment of other partnerships.   There are

many statements in the case law that appear to provide support for this assertion.

As one Court noted:   "If a partnership meets the requirements of the small

partnership exception of section 623(a)(1)(B), it is not considered to be a partnership

for purposes of the partnership litigation procedures.   In that event, no partnership

items exist."   Miller v. United States, 710 F. Supp. 1377, 1379 (N.D. Ga. 1989).

"The small partner provision defines the class of partnerships that are exempt from taxation at the partnership level."   Id.

"The small partnership exception of TEFRA . . . sought to establish that the partnerships which would realize such exception were those 'whose members treated themselves as co-ownerships rather than partnerships, as each co-owner resolves his own tax responsibilities separately as an individual with the IRS.'" McKnight v. Comm'r, 99 T.C. 180, 185 (1992), aff'd, 7 F.3d 447 (5th Cir. 1993)) (quoting Tax Compliance Act of 1982 and Related Legislation: Hearings on H.R. 6300 Before the House Committee on Ways and Means, 97th Cong., 2d Sess. 259– 61 (1982)); see also Dhillon v. Comm'r, No. 16971-98, T.C. Memo 1999-214, 1999 WL 446083, at *3 (U.S. Tax Ct. 1999) (citing the same legislative history). "Congress enacted the small partnership exception of § 6231(a)(1)(B) to ensure that 'simple' partnerships would be excepted."   Wadsworth v. Comm'r, 93 T.C.M. (CCH) 940, 2007 WL 610069, at *5 (2007) (citing McKnight, 99 T.C. at 185).

Debtor argues the small partnership exception in 26 U.S.C. § 6231 is dispositive of how the sale involved in this case should be treated.   Debtor claims that under the small partnership exception, a partnership is disregarded for tax purposes.   Each individual then settles his own obligations with the IRS as if there was no partnership.   Debtor argues that this would mean the sale here was of the

26

farm assets themselves—not a farm partnership interest—because the partnership is ignored.   Debtor would be treated as co-owning the farm partnership assets.   As a sale of farm partnership assets, Debtor asserts that it cannot be disputed the tax claims of both the IRS and IDOR arose from a sale of "farm assets" and thus qualifies for the treatment of § 1222(a)(2)(A).

The IRS and IDOR disagree.   They assert the nature of the property interests at issue under the Bankruptcy Code is to be determined by state law.   Butner v. United States, 440 U.S. 48, 50 (1979); see also In re Newman, 875 F.2d 668, 670 (8th Cir. 1989) ("The nature and extent of the partnership interest is determined by state law.").   In the bankruptcy case of a partner, property of the estate includes the debtor's partnership interest, but not assets held by the partnership itself.   In re Magnani, 223 B.R. 177, 182 (Bankr. N.D. Iowa 1997).   That is because under Iowa law "a partnership is an entity distinct from its partners."   In re Calhoun, 312 B.R. 380, 383 (Bankr. N.D. Iowa 2004).

Under Iowa law, the sale of a partnership interest is not expressly a sale of the personal property of the partnership.   Ranninger v. Iowa Dep't of Rev. and Fin., 746 N.W.2d 267, 269 (Iowa 2008).   "A **partner is not a co-owner of partnership property** and has no interest in partnership property which can be transferred, either voluntarily or involuntarily."   Iowa Code § 486A.501 (2011) (emphasis added).   In

27

the dissolution of a partnership, either a partner's interest is purchased by another partner or by the partnership under section 486A.701 et seq., or the partnership is dissolved and its affairs are wound up under section 486A.801 et seq.   5 Iowa Practice, Business Organizations § 8:1, at 153 (2012–13).   The dissolution is the beginning of the process of winding up.   Id. § 8.4(1).   Partnership assets must be reduced to cash and all partners are entitled to an "in cash" settlement of any balance in capital accounts.   Id. § 8.4(3); Iowa Code § 486A.807(1).

Thus, the IRS and IDOR note the transaction here was in fact a sale of a partnership interest—a capital asset—not the sale of farm assets held by Debtor individually.   They further point out that the Internal Revenue Code provisions dealing with this exact situation support their position.   They argue that 26 U.S.C. § 761(a) specifically defines "partnership" broadly to include "a group, pool, **joint venture** . . ." or the like.   (Emphasis added).   They point out that 26 U.S.C. § 741 addresses this exact issue and states: "in the case of a sale . . . of an interest in a partnership, gain or loss shall be recognized to the transferor partner.   Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items)."   They also point out the Treasury Regulation accompanying this

28

Code section which even more specifically addresses the handling of Debtor's exact

situation:

> Section 741 shall apply whether the partnership interest is sold to one
> or more members of the partnership or to one or more persons who are
> not members of the partnership.  Section 741 shall also apply even
> though the sale of the partnership interest results in a termination of the
> partnership under section 708(b). Thus, **the provisions of section 741
> shall be applicable (1) to the transferor partner in a 2–man
> partnership when he sells his interest to the other partner**, and (2)
> to all the members of a partnership when they sell their interests to one
> or more persons outside the partnership.

Treas. Reg. § 1.741-1(b) (emphasis added).

The IRS and IDOR thus conclude that the regular partnership

provisions—which address the transfer between a "2-man partnership" apply

instead of TEFRA procedures, which include a small partnership exception.   The

taxing entities argue that the TEFRA procedures deal with auditing and litigation

rules and do not supercede the other parts of the Internal Revenue Code specifically

addressing partnership tax treatment.

As with Debtor's arguments, there is some case language that appears to

support the IRS and IDOR reading of how TEFRA and the small business section

were intended to apply.   Cases addressing the purpose and effect of the TEFRA

rules are worth noting.   "TEFRA did not change the taxation of partners and

partnerships; rather it changed only the procedures for determining the appropriate

tax treatment of partnership items." <u>Central Valley Ag Enters. v. United States</u>,

531 F.3d 750, 756 (9th Cir. 2008).    Applying TEFRA "effected a purely procedural

change" and "did not alter [taxpayer] substantive tax obligations." <u>Callaway v.</u>

<u>Comm'r</u>, 231 F.3d 106, 120–21 (2nd Cir. 2000).    "TEFRA provides for unified

partnership audit and litigation procedures . . . ." <u>Addington v. Comm'r</u>, 205 F.3d

54, 59 (2d Cir. 2000) (Sotomayor, J.).    TEFRA "was enacted to improve the

auditing and adjustment of income tax items attributable to partnerships." <u>Weiner</u>

<u>v. United States</u>, 389 F.3d 152, 154 (5th Cir. 2004).

One Court noted that a prime reason for enacting TEFRA was to help ease the

audit burden on the IRS:

> Until 1982, the process of reviewing tax returns of individual partners,
> rather than the returns of the partnership itself, created a significant
> administrative problem.  To address tax issues arising from a single
> partnership, the IRS needed to initiate multiple proceedings.  The IRS
> was forced to conduct distinct investigations for and, where
> appropriate, enter separate settlement agreement with each individual
> partner.

<u>Katz</u>, 335 F.3d at 1125 (citations omitted).    The Court then noted TEFRA was

enacted in response to this problem to provide unified audit and litigation

procedures. <u>Id</u>.

Another court noted that the net effect of TEFRA and the small partnership exception was to keep the old rules in place for "small partnerships"—not create new ones:

> TEFRA audits, with their sometimes arcane distinctions between "partnership," "affected," and "nonpartnership" items can be burdensome, so Congress chose to keep the old audit rules under which each partner resolves his tax liability separately for small partnerships.

Nehrlich, 2007 WL 1095675, at *2.

The IRS and IDOR argue TEFRA does not change the regular rules in this case.   They believe the farm partnership sale transaction should be treated as a sale of a partnership interest by a partner—which is a capital asset subject to capital gains taxes.   26 U.S.C. § 741.   They believe Debtor sold a mere "capital asset" and not a "farm asset" as contemplated by § 1222(a)(2)(A).   They argue "farm assets" are intended to be equipment, tools, and related items—not investment assets.   They seem to suggest that capital assets cannot be considered farm assets.

The Court need not decide the "distressingly complex and confusing" TEFRA small partnership exception questions presented.   Even if the Court were to assume—as the IRS and IDOR suggest—that this was the sale of a "capital asset" instead of individually owned farm equipment and items, § 1222(a)(2)(A) applies nonetheless.

31

The ultimate question here is whether Debtor's partnership interest was a "farm asset used in [his] farming operation" under § 1222(a)(2)(A).   In cases that have considered this section, typical farm assets such as land, equipment, crops, and livestock were transferred.   See Hall, 132 S. Ct. at 1886 (sale of real estate); Knudsen, 851 F.3d at 703 (sale of slaughter hogs); In re Smith, 447 B.R. 435, 439 (Bankr. W.D. Pa. 2011) (sale of farm equipment and herd of cattle).   Debtor's Partnership is more intangible, but is a farm asset nonetheless.

In the portion of Knudsen that was not affected by Hall, the Eighth Circuit addressed substantially similar arguments to those raised here by the taxing entities. 581 F.3d at 710–12.   In addressing those arguments, Knudsen provided what this Court concludes is the dispositive analysis for this case.   The Eighth Circuit noted that the best way to understand the plain meaning of the key phrase—"any farm asset used in the debtor's farming operation"—was to break it into "three parts: (1) any farm asset, (2) used in, and (3) the debtor's farming operation."   Id. at 711. While the first part, "any farm asset," is the focus of the dispute here, the taxing entities have raised arguments under the other two parts as well.

### 1.    Any Farm Asset

"Neither § 1222(a)(2)(A) nor any other provision in Chapter 12 defines the phrase 'farm assets.'"   Id.   The Eighth Circuit then noted several provisions of the

Bankruptcy Code—§§ 541, 1207, 101, and 522—"are instructive in defining farm assets." Id.   "The term 'property' as used in §§ 541 and 1207, is interchangeable with the term 'asset' as used in §§ 101(18) and 522(2)." Id.   "An "asset" is defined as:   1. An item that is owned and has value.   2. The entries on a balance sheet showing the items of property owned, including **cash**, inventory, equipment, real estate, accounts receivable, and goodwill.   3. *All the property of a person available for paying debts."*   Id. (quoting Navarre v. Luna (In re Luna), 406 F.3d 1192, 1199 (10th Cir. 2005)) (bold emphasis added, italics in original).   "As a result, § 1222(a)(2)(A)'s use of the term 'any farm assets' . . . is all encompassing and broadly defined." Id.

Knudsen then went on to note that § 101(18), (20) and (21) give specific meaning to the phrase "any farm assets," as used § 1222(a)(2)(A). Id.   After reciting each of those definitional provisions, the Circuit concluded:

> Thus, "farm assets" would include "any asset related to farming operations, whether or not actually used in farming operations." "Farm assets" would therefore include "**capital assets**" under I.R.C. 1231, other property that may receive favorable tax treatment under I.R.C. § 1232, and inventory items that would otherwise generate ordinary income under I.R.C. § 61.

Id. at 712 (citations omitted).   Here, at the absolute minimum, the IRS and IDOR consider the farm partnership interest a "capital asset." Knudsen is clear that

33

"capital assets" with any relation to farming are "farm assets" under

§ 1222(a)(2)(A).

In this case, Debtor and his brother wound up the affairs of the farm

partnership.   Debtor received a cash settlement from his brother in the amount of

$90,734.50 and three pieces of equipment from the farm partnership.   This

transaction gave rise to the tax claims of the IRS and the IDOR.   Even if they are

correct that the transaction was a disposition of his interest in the farm partnership

and was a "capital asset" subject to capital gains tax treatment, under Knudsen this is

still a farm asset under § 1222(a)(2)(A).   The farm partnership was simply the

vehicle chosen for Debtor and his brother to conduct their farming

operations—presumably for simplicity and favorable tax treatment.   If they were a

slightly larger operation, they may have chosen to have multiple corporations in

which the various assets were held.   For instance, an individual debtor might have

set up separate corporations for their land, for their planting and harvesting

activities, and for raising livestock.   Each corporation would still, under Knudsen,

be considered a farm asset because they are all related to farming.

A couple of cases dealing with issues related to Chapter 12 eligibility further

illustrate this point.   In In re Sandifer, 448 B.R. 382, 387 (Bankr. D.S.C. 2011), the

court considered eligibility for Chapter 12 relief where the debtor and his son

34

received income through a limited liability corporation.   They continued to run the
farm operation in the same fashion both before and after creating the LLC.   For
purposes of the 50% farm income element of § 101(18), the court found the farm
income reported by the LLC was attributable to the debtors.   Id.   It stated:   "To
hold otherwise would merely create an impediment to adopting the limited liability
company form of doing business and would deprive farmers of important tax
benefits and a mechanism to reduce personal liability."   Id.

In In re Maynard, 295 B.R. 437, 441 (Bankr. S.D.N.Y. 2003), the debtor
created a subchapter S corporation for tax reasons, through which he planted,
harvested, and sold crops.   The corporation paid him rent for land he owned and he
personally oversaw all aspects of crop production on the land.   Id.   The court found
the rent the corporation paid to the debtor was "farm income" under § 101(18).
Likewise, in In re Burke, 81 B.R. 971, 977 (Bankr. S.D. Iowa 1987), the court
included in the Chapter 12 debtors' farm income the wages they received from a
corporation which consisted of the debtors' children.

These cases considering § 101(18) eligibility are informative in that courts
look past the form in which a debtor chooses to operate a farm to the substance of the
debtor's farming activities.   Likewise, it is apparent to this Court that, with the farm
partnership holding the typical farm assets, the disposition of Debtor's farm

35

partnership interest was a disposition of his only farm asset—the partnership

interest.   In these circumstances, the Court concludes Debtor's partnership interest

was a farm asset used in Debtor's farming operation under § 1222(a)(2)(A).

### 2.   "Used In"

The second part of the test for application of § 1222(a)(2)(A) is whether the

farm asset was "used in" the farming operation.   The Eighth Circuit also addressed

the meaning of "used in" at length in Knudsen.   The Circuit contrasted "used in"

with the words "related to" that appear in § 101(18), (20), and (21).   581 F.3d at

712.   The Circuit found that "used in" farming—the words of § 1222(a)(2)(A)—are

more restrictive than the words "related to" that appears in the § 101 definitional

sections.   Id.   The Court defined "use" as:   "[T]he application or employment of

something; esp., a long-continued possession and employment of a thing for the

purpose to which it is adapted . . . ."   Id. (quoting Black's Law Dictionary 1540 (7th

ed. 1999)).

Under the plain meaning of the definition of use, Debtor's farm partnership

interest was "used in" the farm partnership farming operation.   Debtor here applied

or employed the partnership interest (which included the right to use the equipment

and land) for the purpose for which it was adapted (farming).   The farm partnership

interest was a "long-continued possession" of Debtor and he employed it for

36

farming.   As counsel for Debtor points out, the farm partnership (a fictional entity) did not farm itself.   Counsel further points out that it is undisputed that the farm partners—including Debtor—did the actual farming.   Debtor thus did the farming by using his farm partnership interest (which gave him access and rights to the farm land, equipment, and tools for farming).   Thus, the Court concludes Debtor's partnership interest was "used in" the farm operation.

Interestingly, in <u>Knudsen</u>, the taxing authorities actually argued the opposite position that only property that received "beneficial treatment in the context of capital gains taxes" could be "used in" farming.   581 F.3d at 713.   The Court rejected such a narrow limit.   However, the taxing authorities admit here the sale of the partnership interest would get capital gains treatment—thus the assets would seem to fit the narrow category the taxing authorities argued for in <u>Knudsen</u> and which the court held too narrow.

### 3.    Debtor's Farming Operation

The IRS also argues that Debtor's farm partnership interest was not used in "Debtor's farming operation" which Debtor is attempting to reorganize in this case. As discussed above in the eligibility section, the language of § 1222(a)(2)(A) does not require that the asset be used in the exact same farm operation Debtor is reorganizing.   <u>See</u> <u>Knudsen</u>, 581 F.3d at 714.

To reiterate, <u>Knudsen</u> rejected the same argument the taxing entities are making here.  <u>Id.</u>  The Eighth Circuit noted that the Knudsens had engaged in a "farming operation" for many years.  <u>Id.</u>  The court noted the operation originally was a "farrow to finish hog production in which the Knudsens were selling their own hogs as their main source of income."  <u>Id.</u>  The Court pointed out that, in 2004 (just before bankruptcy), "The Knudsens 'farm operation' **changed** from a farrow to finish hog operation to raising pigs under a contract with (another party)."  <u>Id.</u> (emphasis added).  The Circuit then specifically rejected the district court's interpretation of § 1222 as indicating that a farm operation means "*the farming operation under the reorganization plan*, not the farming operation as it existed before the farmer's attempt to reorganize."  <u>Id.</u> at 714 n.3 (quoting the district court) (emphasis in original).  The Circuit specifically concluded:  "Nowhere in the language of § 1222(a)(2)(A) does it limit its application to only the 'reorganized' operation."  <u>Id.</u>  This is dispositive of the argument by the IRS and IDOR.

Moreover, if § 1222(a)(2)(A) is applied only to farm assets used in the reorganized operation,—as the IRS and IDOR urge—it would arguably have no effect at all in most, if not all, cases.  Under their argument, the reorganized operation at issue here is only that operation existing at the petition date or thereafter.  Under <u>Hall</u>, however, § 1222(a)(2)(A) is not applicable to taxes arising

38

from postpetition sales.   So under the taxing entities' arguments here,

§ 1222(a)(2)(A) would never have any application where a reorganized entity differs

in any way from the previous entity—which is most, if not all, cases.   The Court

will not construe the statute to effectively be a nullity.   See Dodd v. United States,

545 U.S. 353, 371 (2005) ("It is, of course, a basic canon of statutory construction

that we will not interpret a congressional statute in such a manner as to effectively

nullify an entire section.").   The Court concludes § 1222(a)(2)(A) applies and

overrules the objections of the IRS and IDOR to confirmation.

## SUMMARY

Debtor has met his burden of proving eligibility for relief under Chapter 12.

At the time he filed his bankruptcy petition, he was farming thirty-one acres of

leased land.   The total amount of his debts meets the limit in § 101(18)(A).   Total

gross farm income in 2008 and 2009 was more than 50% of his and his wife's joint

income.   More than 50% of Debtor's total debts, including the amounts owed to the

IRS and IDOR, arose out of Debtor's farming operation.

The claims of the IRS and IDOR are subject to the priority-stripping effect of

§ 1222(a)(2)(A).   They arise from the prepetition dissolution of the Hemann

Brothers Partnership, set up for the brothers to farm together, in which Debtor had a

50% interest.   Debtor's farm partnership interest was a "farm asset used in Debtor's

39

farming operation."   The tax claims arising from the disposition of Debtor's

Partnership interest in the dissolution are subject to priority stripping under

§ 1222(a)(2)(A).   Thus, the Court overrules the only objections to confirmation.

**WHEREFORE**, the objections to confirmation filed by the IRS and the

IDOR are OVERRULED.

**FURTHER**, Debtor's First Amended Chapter 12 Plan of Reorganization is

CONFIRMED.

Dated and Entered:  April 3, 2013

_____
**THAD J. COLLINS, CHIEF JUDGE**
**UNITED STATES BANKRUPTCY COURT**